UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE WRIGHT, et al., | No. 1:25-cv-01251-SAB (PC) |
| Plaintiffs, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| KERN COUNTY, et al., | FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION |
| Defendants. | (ECF No. 12) |

Plaintiffs are proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

On March 3, 2026, the Court screened Plaintiff first amended complaint, found no cognizable claims, and granted Plaintiff one final opportunity to amend the complaint. (ECF No. 1.) Plaintiff failed to file an amended complaint or otherwise communicated with the Court. Therefore, on April 13, 2026, the Court ordered Plaintiff to show why the action should not be dismissed. (ECF No. 12.) Plaintiff has failed to respond to the order to show cause and the time to do so has passed. Thus, the operative complaint before the Court is the first amended complaint, which as explained below, fails to state a cognizable claim for relief and dismissal of

1

the action is warranted.

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of

the screening requirement under 28 U.S.C. § 1915.

On June 14, 2025, Plaintiff was housed in protective custody at Lerdo pretrial facility in F-Pod, Unit 4.  Protective custody inmates are separated from general population inmates because they face a known and substantial risk of assault and violence if exposed to general population inmates.  This risk is widely known to staff and inmates and is confirmed in official incident reports and training practices at Lerdo.

Defendant Deputy Morgan Dunham was responsible for operating and securing the mezzanine housing doors designed to keep incompatible inmate populations separated.

On June 14, 2025, Deputy Dunham negligently opened the mezzanine doors connecting general population inmates to Plaintiff's housing unit.  Deputy Dunham later admitted in an incident report that she believed she opened the correct door but mistakenly allowed access between general population and protective housing units.  This error allowed general population inmates to enter the protective custody housing area.  Video surveillance reviewed by investigators confirmed that general population inmates entered protective custody housing through the fire doors and engaged in physical altercations with protective custody inmates.

Immediately after the doors were opened, several general population inmates rushed into Plaintiff's housing unit armed with makeshift weapons, including sharpened objects and socks with bars of soap in them.  Violent assault began immediately throughout the housing unit.  The riot lasted approximately thirty minutes.  Plaintiff witnessed inmates being stabbed in the neck, face, and upper body.  Plaintiff observed inmates being thrown down stairs and beaten with weapons.  During the riot, deputies attempted to deploy pepper ball launchers through cell tray ports; however, the weapons malfunctioned and failed to stop the violence.  Deputies also attempted to use tasers, which were ineffective in controlling the riot.

During the chaos, Plaintiff slipped on a large pool of blood covering the floor.  Plaintiff fell backward and struck the back of his head on the concrete floor losing consciousness.  When Plaintiff regained consciousness, he was disoriented and confused.  Plaintiff experienced throbbing head pain and dizziness.  Plaintiff immediately noticed he lost sensation along the inner portion of his right leg extending from his waist to his foot and into his first three toes.

3

Despite being injured, Plaintiff attempted to assist another inmate who had been stabbed by dragging him toward a cell for protection.  Plaintiff repeatedly requested medical treatment, but he was not examined by a doctor for his head injury or neurological symptoms.  A nurse briefly looked at Plaintiff's head but did not physically examine the injury.  The nurse slid a pen across Plaintiff's foot to test sensation, and Plaintiff could not feel the pen.  The nurse informed Plaintiff that he likely suffered nerve damage from hitting his head and his name would be placed on the injury list for doctor's evaluation.  Despite submitting approximately four medical request slips, Plaintiff has not been examined by a medical doctor for his head injury.  Plaintiff also filed two formal grievances regarding the lack of medical care and received only one response.

Plaintiff was later diagnosed by Doctor Shalom with severe post-traumatic stress disorder and was prescribed psychiatric medication which was ineffective.  Plaintiff now takes seroquel and clonidine daily and sees the mental health doctor every three weeks.  However, Plaintiff's physical neurological injuries remain untreated.  As a result, Plaintiff continues to suffer: (1) large painful knot on back of his head; (2) chronic headaches; (3) constant dizziness; (4) daily involuntary body jerking; (5) complete numbness from waist down inner right leg to his first three toes; (6) memory and concentration problems; (7) emotional distress and post-traumatic stress disorder; (8) pain and suffering; (9) continued fear and anxiety; and (10) denial of medical treatment.

After deputies partially regained control of the housing unit, approximately four deputies removed Plaintiff from F-Pod.  Plaintiff was not accused of participating in the riot and attempted to help another injured inmate.  Plaintiff was placed in handcuffs and escorted to a safety cell commonly referred to as a "cold tank."  Plaintiff was forced onto his stomach inside the cold tank while still suffering head trauma symptoms.  Deputies removed Plaintiff's handcuffs and instructed him not to move until they exited.  Plaintiff repeatedly pleaded with deputies, stating he was injured and needed medical help.  However, Plaintiff's requests were ignored and he remained in the cold tank for approximately three hours.  The cell contained only a toilet and running water.  Plaintiff was not provided clothing, bedding, or a blanket.

Plaintiff was subsequently transferred to B-Pod, B-1 housing unit, even though he was not

4

involved in the riot.  Plaintiff was placed in a cell without a mattress, blanket, clothing, or personal property for one day.  Plaintiff was forced to sleep on a metal bunk.

Plaintiff was diagnosed by Dr. Shalom with severe post-traumatic stress disorder resulting directly from the riot on June 14, 2025.  Plaintiff experiences nightmares, flashbacks, panic attacks, and sleep disturbances.

The County of Kern and Sheriff's Office maintained policies, customs, and/or training failures that allowed unsafe housing, inadequate riot response, systemic medical neglect, and failure to supervise.

## IV.

## DISCUSSION

### A.    Linkage Requirement

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. See 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Rizzo v. Goode, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### B.    Failure to Protect

The elements of a pretrial detainee's failure-to-protect claim under the Fourteenth Amendment are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused plaintiff's injuries. Castro v. County of Los

Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). The third element requires that the defendant's conduct be "objectively unreasonable," reflecting a state of mind "akin to reckless disregard." Id.

Here, Plaintiff merely alleges that Deputy Dunham "negligently" opened the connecting door between the protective custody unit and the general population which lead to other inmates being assaulted. Plaintiff's allegations are conclusory in nature. Plaintiff does not allege that Deputy Dunham was aware that the inmates in the general population would attack inmates in the protective custody unit simply by opening the connecting door, and yet made an intentional decision. Indeed, Plaintiff acknowledges that Deputy Dunham admitted that she believed she opened the correct door but made a mistake. Further, the complaint fails to sufficiently allege facts showing that that by simply opening the connecting door, Plaintiff was subjected to a substantial risk of suffering serious harm, that Dunham failed to take reasonable steps to abate that risk, that a reasonable deputy in Dunham's position would have appreciated a high risk of harm under the circumstances, and that by not taking such measures, Dunham caused Plaintiff's injuries. See Castro, 833 F.3d at 1071. Plaintiff's conclusory allegations that Deputy Dunham opened the connecting door is insufficient to state a plausible Fourteenth Amendment claim. See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Even if it is assumed that Deputy Dunham was somehow negligent in his actions, such allegations do not give rise to a claim under the Fourteenth Amendment. Castro, 833 F.3d at 1071. Therefore, Plaintiffs have failed to state a cognizable failure to protect claim in violation of the Fourteenth Amendment.

**C.     Medical Treatment**

Plaintiff contends that he was not examined by a doctor following his slip and fall. "[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (emphasis added) (quoting Castro, 833F.3d at 1070)). In Gordon, the Ninth Circuit identified the following elements of a pretrial detainee's medical care claim against an

6

individual defendant under the Due Process Clause of the Fourteenth Amendment:

> (i) the defendant made an intentional decision with respect to the conditions under which [plaintiff] was confined; (ii) those conditions put [plaintiff] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [plaintiff's] injuries.

Id. at 1125.

Plaintiff's first amended complaint lacks sufficient factual basis to support this claim. Plaintiff alleges in conclusory fashion his neurological injuries were not treated. However, Plaintiff acknowledges that he was examined by a nurse following the injury and he was later examined by Doctor Shalom and provided mental health treatment. In addition, Plaintiff received a response to his grievance regarding the lack of medical treatment. Plaintiff fails to allege specific facts identifying the actionable conduct of any Defendant in relation to his medical treatment. See Parker v. Redman, 2023 WL 5242887, at *12-13 (E.D. Cal. Aug. 15, 2023) (pretrial detainee's allegations of inadequate medical care insufficient where plaintiff failed to "name a defendant that is responsible for the actions or omissions related to his medical care"); Bonnette v. Dick, 2020 WL 3412733, at *3 (E.D. Cal. June 22, 2020) (pretrial detainee's various allegations insufficient where plaintiffs "fail to adequately describe specific actions taken by each of the defendants named in the complaint"); Moreno v. Penzone, 2020 WL 1047068, at *2 (D. Ariz. Mar. 4, 2020) ("To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant."). Without such specificity, Plaintiff's claims lack the necessary connection between the alleged injuries and the actions (or inactions) of the defendants. Consequently, Plaintiff has not established that any Defendant acted with deliberate indifference to his medical needs or that their conduct directly resulted in harm. Accordingly, Plaintiff fails to state a cognizable claim for inadequate medical care.

**D.      Conditions of Confinement**

"[P]retrial detainees ... possess greater constitutional rights than prisoners," Stone v. City

and County of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992), and are entitled to treatment more considerate than that afforded individuals who have been convicted of a crime, Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). Constitutional claims of a pretrial detainee "arise[ ] from the due process clause of the [F]ourteenth [A]mendment and not from the [E]ighth [A]mendment prohibition against cruel and unusual punishment." Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (citing Bell v. Wolfish, 441 U.S. 520, 573 n.16 (1979)), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014). "[T]he more protective [F]ourteenth [A]mendment standard applies to conditions of confinement when detainees ... have not been convicted" of a crime. Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987).

Conditions of confinement may violate the Due Process Clause in either of two ways. First, because the Due Process Clause forbids "punishment" of an individual prior to an adjudication of guilt, conditions of confinement are unconstitutional if they are punitive in nature. See Bell v. Wolfish, 441 at 535. Second, the Clause prohibits government officials from exhibiting deliberate indifference to conditions of confinement that impose a substantial risk of serious harm. See Gordon, 888 F.3d at 1125. Plaintiffs may challenge conditions of confinement under either a punitive-in-nature or deliberate-indifference theory. See Fraihat v. ICE, 16 F.4th 613, at 636, 647 (9th Cir. 2021) (resolving each type of claim separately).

The proscription against punishment before trial can be violated in multiple ways. Most obviously, it can be violated if restrictions are "imposed for the purpose of punishment." Bell, 441 U.S. at 538; see also Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (quoting Bell, 441 U.S. at 538) (" '[P]unishment' can consist of actions taken with an 'expressed intent to punish.' ").  If a jailer lacks express intent to punish, "a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.' " Id. (quoting Bell, 441 U.S. at 561).

To "constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004). "Absent evidence of express punitive

8

intent, it may be possible to infer a given restriction's punitive status 'from the nature of the restriction.' " Pierce, 526 F.3d at 1205 (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002)). There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." Bell, 441 U.S. at 538.

Here, Plaintiff alleges that he was subjected to punitive conditions by being placed in a cold tank for approximately three hours without clothing, bedding or a blanket, and then subsequently transferred to B-Pod and placed in a punitive cell without a mattress, blanket, clothing, or personal property until the following day.

Plaintiff's first amended complaint does not plausibly allege that any Defendants named in the complaint were responsible for, or aware of, the conditions in the tank where Plaintiff was placed, or that Plaintiff was not provided bedding, clothing, and mattress. Further, the allegations in the first amended complaint lack detail with respect to how the conditions affected Plaintiff. Plaintiff does not allege that any named Defendant made an intentional decision to place him in a cell with the alleged conditions, nor explains how Defendants subjected him to a substantial risk of serious harm. The first amended complaint also fails to allege that any Defendant did not take reasonable available measures to abate any alleged risk to Plaintiff, and that by not taking such measures, each Defendant caused Plaintiff's injuries. See Gordon, 888 F.3d at 1125. Furthermore, Plaintiff alleges that he was subjected to these conditions for only three hours following a riot which does not appear to amount to punishment.

Plaintiff further claims that he was transferred to a punitive cell in B-Pod. A court presented with a procedural due process claim by a pretrial detainee should first ask if the alleged deprivation amounts to punishment and therefore implicates the Due Process Clause itself; if so, the court then must determine what process is due. See Bell, 441 U.S. at 537-38 (discussing tests traditionally applied to determine whether governmental acts are punitive in nature). Disciplinary segregation as punishment for violation of jail rules and regulations, for example, cannot be imposed without due process, i.e., without complying with the procedural requirements of Wolff v. McDonnell, 418 U.S. 539 (1974). See Mitchell v. Dupnik, 75 F.3d 517, 523-26 (9th Cir. 1996). But the administrative segregation or classification of pretrial detainees that is not punitive and

for which there is no state statute or regulation from which a protected liberty interest could arise does not require procedural protections under federal due process. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976) (interests protected by due process arise from Due Process Clause itself or from laws of the states).

Plaintiff attempts to characterize his placement in B-Pod as punitive in nature, but he does not explain adequately explain how the placement was punitive, rather than potentially administrative.  Indeed, Plaintiff has not indicated if any reason was provided for his transfer to B-Pod following the riot, and absent such facts, the Court cannot determine whether the confinement was due to legitimate concerns, such as institutional security, or if it was done with punitive intent.  In addition, Plaintiff has not indicated which Defendant or Defendants were responsible for his transfer to B-Pod.  Any amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. at 373-75; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d at 743.  Thus, Plaintiff has failed to allege a cognizable claim based on his allegation that he was transitive to punitive conditions in the B-Pod without a hearing.[1]

**E.      Municipal Liability**

Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978).

To establish Monell liability, a plaintiff "must show that (1) he was deprived of a

---

[1] Plaintiff cannot state a claim based on the alleged denial of commissary and personal property.  These allegations fail to state a cognizable claim "because there is no constitutional right to purchase prison canteen products." See Merrick v. Shinn, 846 F. App'x 573, 574 (9th Cir. 2021) (citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)) (holding district court properly dismissed claim based on inability to purchase items and prison store prices); see also Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.")

constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110–11 (9th Cir. 2001) (internal quotation marks and citation omitted).

"There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted), quoting Ulrich v. City and County of San Francisco, 308 F.3d 968, 984-985 (9th Cir. 2002).

Plaintiff has not identified a specific policy that existed at Kern County allowing or directing deputies or other jail officials giving rise to Plaintiff's alleged constitutional violations. Plaintiff's vague and conclusory contention that the County of Kern and Sheriff's Office maintained policies, customs, or training failures that allowed: unsafe housing control, inadequate riot response, systemic medical neglect, and failure to supervise do not state potentially colorable claims for relief based on these theories of municipal liability. See Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal of municipal and supervisor liability claims which "lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' " deemed insufficient by the United States Supreme Court in Twombly, 550 U.S. at 570.

## V.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that the instant action be dismissed for failure to state a cognizable claim for relief.

11

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **May 13, 2026**

STANLEY A. BOONE
United States Magistrate Judge